BOROWSKY v BOROWSKY

Docket No. 262986. Submitted January 19, 2007, at Detroit. Decided
    January 23, 2007, at 9:00 a.m.

    Joseph F. Borowsky, Jr., brought an action for separate maintenance
        in the Family Division of the Kent Circuit Court, and Susan H.
        Borowsky brought a counterclaim for divorce. The trial court,
        Kathleen A. Feeney, J., entered a temporary order granting the
        defendant physical custody of the three children, giving the parties
        joint legal custody, specifying the plaintiff's parenting time, and
        ordering the plaintiff to pay child support. The amount of child
        support was increased when the defendant's position with her
        employer was eliminated, then decreased when the plaintiff's
        position with his employer was eliminated. Thereafter, the defen-
        dant moved to retroactively modify the child support amount,
        arguing that the plaintiff had failed to disclose substantial
        amounts of income. The plaintiff acknowledged that he had made
        hardship withdrawals from a retirement account, but stated that
        any recalculation should also include substantial amounts of
        income that the defendant had not disclosed. After a bench trial,
        the trial court awarded joint physical and legal custody of the
        children to both parties, issued a parenting-time schedule that
        gave the plaintiff slightly less time than the defendant, and
        ordered the plaintiff to pay child support under the sole-custody
        formula of the Michigan Child Support Formula (MCSF) until
        January 15, 2005, and under the shared-economic-responsibility
        formula thereafter. Both parties appealed.

        The Court of Appeals held:

        1. The trial court erred in calculating the amount of child
        support when it included the defendant's gross rental receipts for
        2003 without deducting the expenses she incurred in maintaining
        the property. On remand, the trial court shall determine which
        expenses are deductible, which are not, and recalculate the
        amount of child support accordingly.

        2. The trial court erred by determining that defendant's with-
        drawals from her savings, which she used to pay her living
        expenses, constituted income under the MCSF. However, the trial

court was required to include as income the defendant's capital gain from the 2003 sale of real property she owned, regardless how the gain was used.

3. The trial court did not err in attributing a four-percent annual return on a vacant lot that the defendant owned. The MCSF gives trial courts the discretion to attribute a reasonable rate of return to assets that produce little or no income.

4. The trial court did not err in including the plaintiff's hardship withdrawals from his individual retirement account when calculating his income. The MCSF defines "income" to include payments from retirement accounts, and makes no exceptions for voluntary withdrawals made for hardship reasons.

5. The trial court did not abuse its discretion by refusing to consider the parties' financial data from 2002, regardless of the fact that doing so would have benefited the plaintiff. Under the MCSF, the trial court had the discretion to determine how far back the parties' financial data should be examined for purposes of ascertaining their incomes.

6. The trial court did not abuse its discretion by refusing to order the defendant to pay the plaintiff's attorney fees in light of its finding that neither party was responsible for the protracted nature of the litigation.

7. There was no error warranting reversal of the parenting-time order. In limiting the frequency of the exchanges between the parties and avoiding protracted separations from either parent, the trial court considered the best interests of the children and made a decision that was reasonably calculated to promote strong parent-child relationships.

Affirmed in part, vacated in part, and remanded for further proceedings.

1. DIVORCE — CHILD SUPPORT — CHILD SUPPORT FORMULA — INCOME — CAPITAL GAINS.

  Capital gains from the sale of property are considered income for purposes of calculating child support under the Michigan Child Support Formula, regardless how the gains were used (2004 MCSF 2.01[B][iii]).

2. DIVORCE — CHILD SUPPORT — CHILD SUPPORT FORMULA — INCOME — INDIVIDUAL RETIREMENT ACCOUNTS.

  Payments from individual retirement accounts are considered income for purposes of calculating child support under the Michigan

child support formula, including withdrawals that were made voluntarily for hardship reasons (2004 MCSF 2.01[B], [F]).

*Albuseiri & Boer, P.C.* (by *Mikhail Albuseiri*), for the plaintiff.

*Bregman & Welch* (by *Judy E. Bregman*) for the defendant.

Before: MURPHY, P.J., and SMOLENSKI and KELLY, JJ.

SMOLENSKI, J. Defendant appeals as of right a judgment of divorce. On appeal, defendant challenges the trial court's calculation of child support. On cross-appeal, plaintiff challenges the trial court's determination of parenting time, the trial court's refusal to award him attorney fees, and the trial court's calculation of child support. We conclude that the trial court improperly calculated defendant's income for purposes of determining child support. Therefore, we vacate the judgment's award of child support and remand for recalculation of the award consistent with this opinion. In all other respects, we affirm the judgment.

I. FACTS AND PROCEDURAL HISTORY

In January 2002, plaintiff sued defendant for separate maintenance[1] and defendant counterclaimed for divorce. Shortly thereafter, both parties filed motions for entry of a temporary order. At the time the present action commenced, plaintiff earned a salary of approximately $90,000 a year and defendant earned a salary of approximately $100,000 a year. In addition, both parties had significant assets, which they maintained separately pursuant to a postnuptial agreement signed in 1991. Because the parties' financial affairs were gov-

[1] See MCL 552.7.

erned by the postnuptial agreement, the division of property was largely not at issue.[2] Instead, the primary issues concerned custody of the parties' three minor children and the payment of child support.

In May 2002, the trial court entered a temporary order granting defendant physical custody of the children, but giving the parties joint legal custody. The order also detailed plaintiff's parenting time and ordered plaintiff to pay $361 a week in child support. After the parties sold the marital home, the trial court reduced plaintiff's child support to $334 a week.

In December 2002, defendant's position with her employer was eliminated. As a result, defendant moved for modification of the amount of child support and other relief. In June 2003, the trial court entered an order increasing plaintiff's child support obligation to $1,672 a month.

In September 2003, plaintiff moved for a reduction in child support after his executive position was eliminated. In his motion, plaintiff explained that his severance benefits would expire in October 2003 and noted that defendant had obtained employment that would commence in October 2003. Plaintiff asked that his child support be reduced to $543 a month based on both plaintiff's and defendant's unemployment compensation. In October 2003, the trial court entered an order granting plaintiff's request. On December 10, 2003, the trial court further reduced plaintiff's child support payments to $523 a month commencing January 1, 2004, to reflect defendant's expected salary of $48,000.

On June 22, 2004, defendant moved for the retroactive modification of plaintiff's child support. Defendant

---

[2] The primary property issue concerned the division of the proceeds from the sale of the marital home.

argued that retroactive modification of the order was appropriate because plaintiff had failed to disclose substantial income received since his employment was terminated. Plaintiff responded by admitting that he had made approximately $86,000 in hardship withdrawals from his IRA during 2003. However, he countered that defendant had over $300,000 in unreported income during 2002 and 2003, which he argued should be included in any recalculation of child support.

On January 11, 2005, after a five-day bench trial,[3] the trial court issued an opinion from the bench. The trial court first found that both parties had an established custodial environment with the children. The court then examined the best-interests factors and found that, although there was a slight preference for defendant on a few factors, the majority of them favored neither party. On the basis of this evidence, the trial court determined that a change in the custodial environment was not warranted. Therefore, the trial court awarded the parties joint physical and legal custody of the minor children.

The court then turned to the parenting-time schedule. The court noted that the current parenting-time schedule had been working well for the three years that the divorce had been pending. The court rejected the schedule recommended by the Friend of the Court (FOC) because it thought that, given the age of the children, it would be inappropriate to have the children regularly away from either parent for an extended period. The trial court also wanted to ensure that the children had a weekly routine and that both parents would be able to fully participate in parenting. Therefore, the trial court instituted a parenting-time sched-

[3] The trial dates were May 21, 2004; June 4 and 7, 2004; October 25, 2004; and November 24, 2004.

ule that gave plaintiff somewhat less time than the equal division recommended by the FOC, but comported with the trial court's other considerations.

The trial court next addressed the issue of child support. The court indicated that support was currently based on the $13,000 plaintiff had been earning while enrolled in school and on defendant's salary of $48,000. However, the trial court determined that the parties' income would have to be recalculated to reflect the additional sources discussed by the parties. Additionally, the trial court rejected defendant's request that the recalculated child support be applied retroactively to September 2003. Instead, the court determined that the recalculation should be retroactive to the date of defendant's motion to modify the child support order, which was June 22, 2004. However, because the court did not yet have the necessary financial information to apply the formula, the trial court left the final calculations for later.

Finally, the trial court found that neither party bore fault for the protracted nature of the litigation. Therefore, the trial court declined to award attorney fees to either party.

On May 6, 2005, the trial court held a hearing to resolve the disputes concerning the calculation of child support and to finalize the judgment of divorce. After the hearing, the trial court entered a judgment of divorce that incorporated its findings and orders from the bench on January 11, 2005. The judgment included an order for plaintiff to pay $1,922.57 a month in support under the sole-custody formula for the period spanning June 22, 2004, through January 15, 2005. Commencing January 15, 2005, the trial court ordered plaintiff to pay child support under the shared-economic-responsibility formula at the rate of $784.28 a month.

This appeal followed.

## II. CHILD SUPPORT ORDER

We shall first address the parties' various claims of error with regard to the trial court's calculation of the child support obligation.

### A. STANDARD OF REVIEW

Whether the trial court properly applied the Michigan Child Support Formula (MCSF) to the facts of the case is a question of law that this Court reviews de novo. *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000). This Court also reviews de novo the proper interpretation of the MCSF and the applicable statutes. *Atchison v Atchison*, 256 Mich App 531, 534-535; 664 NW2d 249 (2003). This issue also involves review of matters committed by the MCSF to the discretion of the trial court. Where the MCSF commits a matter to the discretion of the trial court, this Court will review the trial court's exercise of discretion for abuse. *Burba, supra* at 649 (holding that the trial court abused its discretion by deviating from the formula for a legally improper reason). An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Finally, to the extent that the trial court made factual findings in determining the amount of support under the child support formula, those findings are reviewed for clear error. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990).

### B. THE CALCULATION OF INCOME UNDER THE CHILD SUPPORT FORMULA

It is well settled that children have the right to receive financial support from their parents and that

trial courts may enforce that right by ordering parents to pay child support. MCL 722.3; *Macomb Co Dep't of Social Services v Westerman*, 250 Mich App 372, 377; 645 NW2d 710 (2002). However, once a trial court decides to order the payment of child support, the court must "order child support in an amount determined by application of the child support formula . . . ." MCL 552.605(2); see also 2004 MCSF 1.04; *Ghidotti v Barber*, 459 Mich 189, 200; 586 NW2d 883 (1998). A trial court must strictly comply with the requirements of the MCSF in calculating the parents' support obligations unless it "determines from the facts of the case that application of the child support formula would be unjust or inappropriate . . . ." MCL 552.605(2); see also *Peterson v Peterson*, 272 Mich App 511, 518; 727 NW2d 393 (2006) (stating that this Court must ensure compliance with the plain language of the MCSF and that courts are not free to read into the MCSF what is not there). If the trial court determines that deviation from the formula is warranted, it must set forth in writing or on the record (1) the amount of child support determined by application of the formula, (2) how the order deviates from the formula, (3) the value of property or other support awarded instead of the payment of child support, if applicable, and (4) the reasons why application of the formula would be unjust or inappropriate in the case. MCL 552.605(2)(a) through (d). *Burba, supra* at 644-649.

The first step in determining the parents' support obligation under the MCSF is to determine each parent's net income in order to "establish, as accurately as possible, the monies available to support the children." 2004 MCSF 2.01(A). "Net income" is defined as "gross income minus all of the deductions allowed for the purpose of calculating child support." 2004 MCSF

2.01(E). Thus, in order to calculate net income, the trial court must first ascertain and then total the parents' various sources of income. The manual broadly defines "income" to include:

> (i) Commissions, earnings, salaries, wages, and other income due or to be due in the future to an individual from his or her employer and successor employers.

> (ii) A payment due or to be due in the future to an individual from a profit-sharing plan, a pension plan, an insurance contract, an annuity, social security, unemployment compensation, supplemental unemployment benefits, or worker's compensation.

> (iii) An amount of money that is due to an individual as a debt of another individual, partnership, association, or private or public corporation, the United States or a federal agency, this state or a political subdivision of this state, another state or a political subdivision of another state, or another legal entity that is indebted to the individual. [MCSF 2.01(B), citing MCL 552.602(n).]

Although this definition encompasses most types of earnings of and debts owed to a party, the formula specifically excludes some receipts from consideration as income. See, e.g., 2004 MCSF 2.03 (children's income), 2.05 (social security benefits), 2.07 (inheritances and one-time gifts), and 2.09 (means-tested income sources). Hence, under the MCSF, income is anything that falls within the definition provided by 2004 MCSF 2.01(B) and is not otherwise excluded from treatment as income under the MCSF. Finally, once the gross income is tallied, the trial court must subtract *allowed* deductions from gross income to arrive at net income. 2004 MCSF 2.01(E) (emphasis added). See 2004 MCSF 2.11(D)(7) (permitting deductions for particular types of expenses) and 2.12 (listing allowed deductions from gross income).

### 1. DEFENDANT'S RENTAL INCOME FOR 2003

Defendant first contends that the trial court erred when it included her gross rental receipts for 2003 without deducting the expenses incurred in maintaining the property as a rental property. We agree.

In compliance with the court's instructions, the parties submitted sworn financial statements and documentation concerning their incomes for 2003 and 2004. Defendant's schedule E for 2003 indicated that she received $28,600 in gross rental receipts from her rental property. Although defendant did not dispute that rental receipts constitute income for purposes of the child support formula, see 2004 MCSF 2.01(B)(iii) and 2.01(F)(28), defendant argued that she was entitled to deduct the more than $39,000 in expenses she incurred in maintaining the rental property. The trial court disagreed, explaining:

> With respect to this, she did receive the amounts in the gross rental income. I know that for purposes of the tax return, it appears that there was a loss with respect to this, but what the Court continues to go back to is the opinion that the Court had in another case affirmed by the Court of Appeals where this Court basically came to the determination that income people live off of, not the way they put it on their tax returns[,] determines whether or not it's deemed income for purposes of establishing child support, and this I think was income. If, in fact, there were losses and other amounts that had to be paid out of the sale of the property, that's one thing. I'm going to include that rental income.

As already noted, in order to calculate net income, the trial court must first ascertain the parties' various sources of income and then subtract the allowed deductions. 2004 MCSF 2.01. The child support formula provides that the trial court should determine the

parties' net income "from actual tax returns whenever possible." 2004 MCSF 2.02(A). Hence, the trial court will normally examine the parties' tax returns in order to ascertain the parents' various sources of income and any permissible deductions. Nevertheless, "[b]ecause tax rules and forms, and business balance sheets, . . . have quite different purposes, it is necessary to examine such documents carefully, with an emphasis on what is not available from those documents and what needs translation into child support terms." 2004 MCSF 2.11(B). With regards to deductions applicable to certain types of income, the formula states that,

> [f]or a wide variety of historical and policy reasons, there are a considerable number of deductions allowed for taxation of business and individuals that are irrelevant to, and therefore not allowed as deductions from income for purposes of, child support determination, unless the *expenses are consistent with the nature of the business*. [2004 MCSF 2.11(D)(7) (emphasis in original).]

Consequently, although the trial court should examine a party's tax returns in order to determine net income, the deductions permitted for tax purposes do not necessarily correspond to the deductions permitted for purposes of determining child support. Instead, before a deduction under 2004 MCSF 2.11(D)(7) may properly be applied to a particular source of income, the trial court must first find that the relevant deduction is an actual expense and that the expense is consistent with the nature of the business to which it applies.

In the present case, the trial court refused to permit defendant to take any deductions against her rental income for 2003 despite the fact that she had more than $39,000 in expenses on her 2003 tax return. The list of

expenses stated on her schedule E included depreciation, advertising, cleaning and maintenance, insurance, management fees, mortgage expenses, taxes, and utilities. Although some of these deductions are clearly not allowed for purposes of calculating child support, see 2004 MCSF 2.11(D)(7)(b) (disallowing certain depreciation expenses), others might properly be deemed expenses that are consistent with the nature of the business of renting real estate. Because defendant is entitled to have her net income determined by subtracting allowable deductions from her gross income, see 2004 MCSF 2.01(E), the trial court should have made the necessary findings with regard to those expenses and calculated her income accordingly. Therefore, it will be necessary to remand this case to the trial court to make the necessary findings regarding this issue and, if warranted, to adjust defendant's income to reflect those expenses that are properly deductible under the formula.

## 2. CAPITAL GAINS

Defendant next argues that the trial court erred when it determined that defendant's withdrawals from her savings, which the trial court characterized as withdrawals of capital gains, constituted income under the child support formula. Because we find no support for the trial court's conclusion that the withdrawal of funds from savings to pay current living expenses causes the withdrawals to be treated as income under the formula, we conclude that the trial court erred when it included defendant's withdrawals as income. However, on review de novo, we also conclude that, under the child support formula, the trial court was required to include defendant's 2003 gains from the sale of real property as income.

In September 2003, defendant sold her rental property and, according to her 2003 tax return, realized a capital gain of just over $100,000. In its bench opinion and at the subsequent hearing to finalize the judgment, the trial court concluded that it could not treat an exchange of property for money as income for purposes of calculating child support.[4] For that reason, it determined that the gain defendant realized from the sale of her property was not income. Nevertheless, the trial court determined that, to the extent that defendant used her previously realized gain to pay her ordinary living expenses, those withdrawals should be treated as income. The trial court explained:

> The Court finds the analysis of what is exactly income for purposes of calculating child support rather interesting, because I've had the ability to evaluate this question at length in another case that went up to the Court of Appeals and was affirmed. . . .
>
> In that case, the Court has to look very carefully at exactly what is income for purposes of child support. When we look at the child support guidelines and as I look at [MCL 552.519(3)(a)(*vi*)], we look at basing child support on the actual resources of the parents. I know it's very easy to look at the child support guidelines and say, well, this is not an income producing asset. What we have to do is look to determine whether or not income is being hidden in property, put in non-producing property, and being avoided as being considered for purposes of child support. For example, a parent can't substitute property for income and avoid child support.

---

[4] The trial court relied on an unpublished opinion of the Court of Appeals for the proposition that the exchange of an asset for money can never constitute income under the child support formula. However, unpublished opinions are not binding authority, see MCR 7.215(C)(1), and we reject that proposition as contrary to the plain language of MCL 552.602(n) and 2004 MCSF 2.01(B).

The court then stated that it would be necessary to examine how defendant used the gain from the sale of her rental property to determine whether and to what extent the gain should be treated as income.

Consistent with this approach, the trial court asked defendant to submit financial records concerning both the total gain from the sale of the rental property and the use to which the funds were put. From these records, the trial court found that defendant had used $13,000 of the funds to pay living expenses in 2003 and used $122,000 of the funds to pay living expenses in 2004. Therefore, the trial court treated the $13,000 and $122,000 used in 2003 and 2004 as income. The trial court also treated defendant's payment of $40,000 on her home mortgage as a withdrawal for living expenses that constituted income despite the fact that the $40,000 payment was apparently made with a portion of the $122,000 in withdrawals already treated as income. Thus, for child support purposes, the trial court treated defendant as having $175,000 in income from withdrawals of capital gains in addition to her actual earnings for 2003 and 2004.[5]

On appeal, defendant contends that the trial court properly concluded that the gain she realized from the sale of the property was not income for purposes of calculating child support, but argues that the trial court erred when it treated the withdrawals of funds derived from the sale of the property to pay living expenses as income. Because the trial court's treatment of defendant's withdrawals from savings is inextricably linked to its understanding of the treatment of capital gains

---

[5] On appeal, plaintiff argues that the trial court appropriately treated $135,000 in withdrawals by defendant as income. Plaintiff does not address the remaining $40,000 in income attributed to defendant based on her mortgage payment.

under the MCSF, we shall first determine whether and to what extent capital gains are to be treated as income under the MCSF.

Although the child support formula does not directly address gains from the sale of property, 2004 MCSF 2.01(B)(iii) broadly defines income to include "[a]n amount of money that is due to an individual as a debt of another individual" or other entity. When a buyer agrees to purchase an asset, whether real or personal, the buyer becomes obligated to pay to the seller the agreed-upon sum. Because the seller is due an amount of money as the debt of another individual, however momentarily, the money owed to the seller constitutes income within the meaning of 2004 MCSF 2.01(B)(iii).[6] See *Shinkle v Shinkle (On Rehearing)*, 255 Mich App 221, 226-227; 663 NW2d 481 (2003) (noting that money owed to an individual as a debt constitutes income under the MCSF). Thus, gains from the sale of property fall within the broad definition of "income" provided in 2004 MCSF 2.01(B). Further, the MCSF does not specifically exclude gains from the sale of property from treatment as income. This is in direct contrast to the MCSF's treatment of inheritances and one-time gifts. See 2004 MCSF 2.07 (stating that the principal or property making up the inheritance or one-time gift is not income, but that the interest earned from the principal or property is income). Because gains of this nature fall within the definition of income stated in the MCSF and are not specifically excluded from treatment as income, gains from the sale of property must be

---

[6] Under 2004 MCSF 2.11(D)(7), it is appropriate for the trial court to deduct all the expenses associated with acquiring, maintaining, and selling the asset in question. Hence, the amount of income for purposes of calculating child support will typically correspond to the amount of gain actually realized in the sale of the asset. See 26 USC 1001, 1011, and 1012.

included as income for purposes of calculating child support. *Peterson, supra.*[7] Therefore, the trial court should have included the entire gain from the sale of real estate in defendant's income for 2003 without regard to how defendant actually used the funds.[8]

Further, to the extent that the trial court may have treated defendant's withdrawals from her savings to pay living expenses as income, that too was error. The trial court appears to have determined that, even though nothing within the child support formula supported its treatment of withdrawals from savings as income for purposes of calculating child support, it could nevertheless treat withdrawals of this nature as income because it would be consistent with the formula's stated purpose of calculating support "based upon

[7] In contrast to the MCSF, other jurisdictions have specific provisions addressing whether gains should be treated as income for purposes of calculating child support. See *Mahlerwein v Mahlerwein*, 160 Ohio App 3d 564, 574; 828 NE2d 153 (2005) (stating that nonrecurring or unsustainable income or cash flow items are specifically excluded from income for purposes of calculating child support obligations); *Caldwell v Alaska*, 105 P3d 570, 573 (Alas, 2005) (noting that the civil rules include capital gains as income for calculating child support to the extent that they represent a regular source of income); *In re Paternity of G R G*, 829 NE2d 114, 118 (Ind App, 2005) (stating that, under Indiana's child support guidelines, capital gains are included in gross income); *Berge v Berge*, 710 NW2d 417, 420 (ND, 2006) (noting that the examples of gross income for child support purposes includes "gains" and stating that it had "consistently held that nonrecurrent payments are includable in an obligor's income for determining child support").

[8] We are cognizant that one-time sales of real property can create a distorted impression of a party's income for purposes of calculating child support. However, we note that, where such distortion renders application of the formula unjust or inappropriate, it is within the trial court's discretion to deviate from the formula and exclude such amounts from treatment as income on that basis. See 2004 MCSF 1.04(C) and (D). The trial court may also examine the financial records from an extended period in order to mitigate the distorting effects on income caused by sporadic sales of property. See 2004 MCSF 2.01(C).

the needs of the child and the actual resources of each parent." See MCL 552.519(3)(a)(*vi*). However, trial courts are not free to deviate from the MCSF because they disagree with its provisions. See *Burba, supra* at 648-649. This is true even when the trial court concludes that its treatment of a particular matter would better comply with the requirement that the formula be based on "the needs of the child and the actual resources of each parent." MCL 552.519(3)(a)(*vi*). Rather, trial courts must comply with the MCSF unless they determine that application of the MCSF would be unjust or inappropriate. MCL 552.605(2). The trial court did not determine whether, in light of the substantial financial resources available to defendant, it would be unjust or inappropriate to apply the MCSF. Instead, the trial court simply determined that it could treat defendant's withdrawals, whether described as from capital gains or from savings, as income under the MCSF if defendant used those funds to "live off of." Because the trial court's treatment of defendant's withdrawals is not supported by the MCSF and the trial court failed to comply with the requirements for deviation, it will be necessary to remand this case to the trial court for recalculation in conformity with the provisions of the MCSF.

### 3. NON-INCOME-PRODUCING ASSETS

Defendant next argues that the trial court erred when it imputed a reasonable rate of expected return from a vacant lot purchased by defendant for $165,000. Specifically, defendant argues that 2004 MCSF 2.08 was not intended to apply to property such as her vacant lot, but rather "that this section . . . is meant to apply in situations where a party is deliberately under-using assets so as to avoid producing income." We conclude

that the trial court did not err in imputing a four percent return for the vacant lot.

At the May 6, 2005, hearing, the trial court determined that a four percent annual return should be attributed to defendant's vacant real estate lot, which she purchased for $165,000. The trial court explained that it based its decision on "the income that it's able to generate . . . ."

Under 2004 MCSF 2.08(A), "[n]on-income or low-income producing assets should be evaluated to establish a reasonable rate of expected return depending on the type and nature of the asset." "[A] reasonable rate of expected income may be attributed to those assets by using current average interest rates for passbook savings accounts, treasury bills, treasury bonds, certificates of deposit, etc." 2004 MCSF 2.08(B). Hence, the trial court had the discretion to attribute a reasonable rate of return for assets held by defendant that either produced no income or low income.

Contrary to defendant's argument on appeal, this section clearly applies to all non-income- or low-income-producing assets. Further, there is absolutely no support in the MCSF for defendant's contention that the trial court had to find that defendant was deliberately under-utilizing the property in question to avoid producing income before income could be attributed to it under 2004 MCSF 2.08. A parent might legitimately determine that investment in a non-income- or low-income-producing asset will realize a better gain over the long term than an investment in an asset that regularly generates income. Nevertheless, a parent's decision to invest in non-income- or low-income-producing assets should not be made at the expense of supporting his or her children. The provisions of 2004 MCSF 2.08 represent a clear policy choice in favor of imputing "a reasonable rate of expected income" for

these assets without regard to the parent's motivation. 2004 MCSF 2.08(B). The trial court did not abuse its discretion when it attributed a four percent return to the vacant lot.[9]

#### 4. IRA WITHDRAWALS

On cross-appeal, plaintiff argues that the trial court erred when it included as income his hardship withdrawals from his individual retirement account (IRA). We disagree.

Under 2004 MCSF 2.01(F)(13), distributions from deferred compensation plans, such as IRAs, are treated as income for purposes of calculating child support. Nevertheless, plaintiff contends that the trial court erred when it treated his withdrawals from his IRA as income under the MCSF. Plaintiff argues that, because his IRA withdrawals were hardship withdrawals rather than regular payments after retirement, the withdrawals do not constitute income under 2003 MCSF 2.01(B) & (F). Plaintiff relies on 2004 MCSF 2.06(A), which reads: "If a payer retires and receives payment from an IRA, defined contribution, or deferred compensation plan, income from contributions to the plan which were previously assessed for child support should be excluded on a prorated basis." Contrary to plaintiff's contention, nothing in this section indicates that voluntary withdrawals from an IRA before retirement are to be excluded from income for purposes of calculating child support. Therefore, because voluntary IRA withdrawals fall within the definition of income stated under 2004

---

[9] Further, because defendant failed to properly support her argument on appeal, we decline to address defendant's contention that the trial court miscalculated the applicable amount of income attributable to the property for the year in which she bought it. See *Hamade v Sunoco, Inc (R&M)*, 271 Mich App 145, 173; 721 NW2d 233 (2006).

MCSF 2.01(B) and are not specifically excluded by another provision of the MCSF, the trial court properly included the withdrawals in calculating plaintiff's income.[10]

### 5. FINANCIAL DATA FOR 2002

Plaintiff also argues on cross-appeal that the trial court abused its discretion when it refused to consider the parties' financial data for 2002 in addition to the data from 2003 and 2004. We disagree.

The MCSF does not specifically require trial courts to examine the parents' financial information for any particular period; rather, it indicates that income should be "determined from actual tax returns whenever possible." 2004 MCSF 2.02(A). However, under 2004 MCSF 2.01(C),

[w]here there is evidence of considerable variation in income due to seasonal employment, overtime, second jobs, bonuses, or profit sharing, etc., information from at least the preceding twelve months should be used in calculating net income. Certain occupations and self-employed persons may have considerable variation in income from year to year. The use of three years' income information is recommended where such variation exists.

On the basis of this language, we conclude that the trial court had the discretion to determine how far back the parties' financial data should be examined for purposes of ascertaining their incomes.

On appeal, defendant argues that it was an abuse of discretion for the trial court to refuse to examine the

---

[10] On appeal, plaintiff also argues that the trial court should not have treated his IRA withdrawals as income to the extent that the withdrawals were used to pay his attorney fees. However, plaintiff failed to adequately brief this argument on appeal. Therefore, we decline to address it. See *Hamade, supra*.

parties' financial data for 2002, because, had it factored in defendant's income for 2002, it would have resulted in a substantial decrease in plaintiff's child support obligation. However, the mere fact that the outcome would have been better for plaintiff had the trial court examined the parties' financial data for 2002 is not, by itself, sufficient to warrant a conclusion that the trial court abused its discretion when it refused to do so. On this record, we cannot conclude that the trial court's decision fell outside the range of reasonable or principled outcomes. *Maldonado, supra* at 388. Therefore, there was no abuse of discretion.

### 6. CONCLUSION

The trial court erred, as a matter of law, when it included defendant's gross rental receipts in her income for 2003. The trial court should have evaluated the deductions applicable to defendant's gross rental receipts and deducted them to derive the net rental receipts to be included in defendant's gross income. The trial court also erred when it failed to include the gains realized from the sale of defendant's real property in her income for 2003 and when it deviated from the MCSF by treating defendant's withdrawals from savings as income. The trial court did not err when it included plaintiff's withdrawals from his retirement accounts in plaintiff's gross income. Likewise, the trial court did not abuse its discretion when it attributed four percent income to defendant's vacant lot and declined to review the parties' financial records for 2002.

### III. ATTORNEY FEES

Plaintiff next argues that the trial court abused its discretion when it refused to order defendant to pay his attorney fees. We disagree.

It is within the discretion of the trial court to award attorney fees in domestic relations cases. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005), citing MCL 552.13; MCR 3.206(C). "A party to a divorce action may be ordered to pay the other party's reasonable attorney fees if the record supports a finding that such financial assistance is necessary to enable the other party to defend or prosecute the action." *Stackhouse v Stackhouse*, 193 Mich App 437, 445; 484 NW2d 723 (1992). An award of legal fees is also authorized where the party requesting the fees has been forced to incur them as a result of the other party's unreasonable conduct. *Id.* The party requesting the attorney fees has the burden of showing facts sufficient to justify the award. MCR 3.206(C)(2); *Reed, supra* at 165-166.

On appeal, plaintiff contends that defendant engaged in dilatory trial tactics designed to abuse him and frustrate his efforts to participate in their children's lives and obtain a just child support arrangement. However, plaintiff merely summarizes the various actions taken by defendant throughout the lower court proceedings without further evidence. On the record before us, we cannot conclude that the actions complained of were not taken in good faith. Furthermore, the trial court specifically found that neither party was responsible for the protracted nature of the litigation. Therefore, plaintiff has not demonstrated that the actions taken by defendant were unreasonable or that any expenses he incurred were causally connected to her conduct. *Stackhouse, supra.* The trial court did not abuse its discretion in declining to award plaintiff his attorney fees.

### IV. PARENTING TIME

Finally, plaintiff argues that the trial court erred when it adopted a parenting-time order based on find-

ings that were against the great weight of the evidence and committed clear legal error by failing to "ascertain what type of parenting time arrangement would be in the best interest of the parties' children." Specifically, plaintiff argues that the trial court's parenting time schedule is flawed because it relies on an unsubstantiated determination that the parties' young children should not be separated from their parents for extended periods and because the trial court abdicated its responsibility to order parenting time that was in the best interest of the children. We disagree.

This Court reviews de novo an order regarding parenting time. *Brown v Loveman*, 260 Mich App 576, 591; 680 NW2d 432 (2004). However, this Court must affirm a parenting time order "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; see also *Mauro v Mauro*, 196 Mich App 1, 4; 492 NW2d 758 (1992). Parenting time shall be "granted if it is in the best interest of the child and in a frequency, duration, and type reasonably calculated to promote strong parent-child relationships." *Brown, supra* at 595, citing MCL 722.27a(1).

We cannot agree with plaintiff's contention that the trial court failed to consider the best interests of the children or made findings that were against the great weight of the evidence. In its bench opinion, the trial court noted that the children were doing well under the parenting-time order already in effect and concluded that it would be best to make minor modifications to that order to reflect the concerns of the parties. The court explained that it wanted to limit the frequency of the exchanges between the parties and also provide a complete parenting-time experience for both parents.

The trial court also noted that it wanted to avoid having long periods when the children did not have contact with either parent, which it thought would not be appropriate given the very young ages of the children. Consequently, the trial court properly considered the best interests of the children and attempted to establish a schedule that was "reasonably calculated to promote strong parent-child relationships." *Brown, supra* at 595. Further, we find no support in the record for plaintiff's contention that the trial court found that the children would be harmed under a schedule that permitted the children to stay with one parent for an extended period. Rather, the trial court determined that it was in the best interests of the children to not have protracted separation from either parent. Therefore, the trial court did not make findings against the great weight of the evidence.

There was no error warranting reversal of the parenting-time order.

### V. CONCLUSION

Because the trial court did not properly apply the MCSF in calculating the applicable child support, we vacate the trial court's child support order and remand for recalculation of the support order. On remand, the trial court shall recalculate defendant's income consistent with this opinion. Upon recalculation, the trial court may elect to deviate from the MCSF should it conclude that application of the MCSF would be unjust or inappropriate under the facts of this case. If the trial court elects to deviate from the formula, it shall satisfy the requirements of MCL 552.605(2)(a) through (d). See *Burba, supra* at 643-649. In all other respects, we affirm the judgment of the trial court.

Affirmed in part, vacated in part, and remanded for recalculation of the child support order consistent with this opinion. We do not retain jurisdiction.