# STATE OF MICHIGAN

# COURT OF APPEALS

ERIKA BRIDGE,

        Plaintiff/Counter-Defendant-
        Appellee/Cross-Appellant,

v

ANDREW BRIDGE,

        Defendant/Counter-Plaintiff-
        Appellant/Cross-Appellee.

UNPUBLISHED
August 15, 2017

No. 335453
Ingham Circuit Court
Family Division
LC No. 15-003840-DM

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right the parties' judgment of divorce establishing joint legal custody of the parties' two minor children as well as child and spousal support. Plaintiff cross-appeals by right. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff filed for divorce in November 2015. After a preliminary conciliation hearing, the conciliator recommended that plaintiff be granted sole physical and legal custody of the children on an interim basis, with defendant to receive generous parenting time. The conciliator noted that defendant's employment status had recently changed from employee to independent contractor, but nonetheless recommended that defendant pay child support on the basis of his 2015 employee-based income. Defendant objected to the conciliator's recommendations regarding legal custody and support, but at the hearing on the objections only argued against the award of sole legal custody. The trial court adopted the conciliator's recommendations and issued an interim order. The parties entered into pre-trial stipulations regarding property division and parenting time. The trial court found that the children had an established custodial environment with plaintiff and informed defendant that he would have to prove by clear and convincing evidence that a change of legal custody would be in the children's best interests.

A bench trial was held on the issues of child custody, child support, and spousal support. After considering the statutory best-interest factors, the court awarded the parties joint legal custody of their two children. The trial court noted that a balancing of the factors justified joint

-1-

legal custody, stating that although the parties had difficulty cooperating "in a natural way," they were able to use a computer program called Our Family Wizard to communicate and resolve issues involving the children.

Regarding child and spousal support, defendant requested that the trial court adjust his income retroactively to reflect the fact that it had declined significantly in 2016. The trial court found that defendant's income in 2015 had been $300,000, but had been involuntarily reduced because of a change in his employment status. After disallowing several business expenses associated with defendant's business, which placed defendant's income in the low $90,000 range, the trial court imputed to him an income of $132,000 a year. The trial court also determined that plaintiff, who was working part-time as a teacher, did not have a voluntarily unexercised ability to earn and that her income was $32,000 a year. The trial court ordered defendant to pay child support in the amount of $2,035 per month, and spousal support in the amount of $711 per month for one year. These appeals followed.

## II. DEFENDANT'S APPEAL

Defendant raises several issues touching on the parties' income, spousal support, and child support. We review for an abuse of discretion a trial court's decision to impute income to a party. *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011). In this context, a trial court abuses its discretion when the outcome falls outside the range of reasonable and principled outcomes. *Id*. We review for clear error a trial court's findings of fact concerning spousal support, *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990), and its calculation of child support under the Michigan Child Support Formula (MCSF), *Ewald v Ewald*, 292 Mich App 706, 714; 810 NW2d 396 (2011). We will only find clear error if we are definitely and firmly convinced that the trial court made a mistake. *Carlson*, 293 Mich App at 205. We review de novo the interpretation and application of the MCSF. *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007).

## A. CHILD SUPPORT

Defendant argues that the trial court misunderstood the nature of his business, which he asserts led it to erroneously attribute to him an income of $132,000 for purposes of determining child support. We disagree. "It is well settled that children have the right to receive financial support from their parents and that the trial courts may enforce that right by ordering parents to pay child support." *Id*. at 672-673. Once the trial court has determined a parent's gross income, it must "subtract *allowed* deductions from gross income to arrive at net income." *Id*. at 674.

The MCSF recognizes it can be difficult to determine the income of self-employed individuals and business owners. 2017 MCSF 2.01(E)(1). Accordingly, a trial court is advised to examine business income carefully and to pay special attention to, among other things, personal use of business property. 2017 MCSF 2.01(E)(4)(b). The trial court should also carefully consider business expense deductions in the context of the goal behind an award of child support:

> For a variety of historical and policy reasons, the government allows considerable deductions for business-related expenses before taxes are calculated. Those same

considerations are not always relevant to monies a parent should have available for child support. Therefore, some deductions should be added back into a parent's income for purposes of determining child support . . . . [2017 MCSF 2.01(E)(4)(e).]

Defendant testified that he was working as an independent contractor in the field of selling spinal implants. His company, Total Devise, had a contract with defendant's former employer, K2M, to sell spinal implants. The compensation arrangement provided for defendant and his subcontractor,[1] Joseph Parker, each to receive 50 percent of the gross income of the business, and for defendant to be accountable for business expenses.

Mark Tallis testified that in 2016 he assisted defendant with the "current year's business work" as an enrolled agent.[2] For the first seven months of 2016, defendant's income was $55,000 and Parker's was $77,000. The disparity resulted from the business expenses for which defendant was responsible. Tallis testified to business operating costs that included advertising, automobile, telephone, travel, and entertainment expenses. The trial court disallowed several of defendant's claimed business expenses, and calculated defendant's projected income for child support purposes in 2016 as being "closer to the low 90s."

We conclude that the court did not err by disallowing certain business expenses. Defendant did not explain, for example, how expenses incurred for attending a conference in Wyoming were related to his Lansing-based business. Although defendant asserts that traveling to conferences is part of his job as a salesman, he emphasized that he only can sell his products to neurologists located in the Lansing area. Additionally, Tallis could not explain which of defendant's asserted automobile expenses were for business and which were personal. The trial court must add back into a parent's income insurance, utility, entertainment, and automobile expenses, as well as travel expenses, unless they are "inherent in the nature of the business or occupation," even if those expenses are tax deductible. See 2017 MCSF 2.01(E)(4)(e)(iv) to (vii). That the IRS may find the expenses reasonable is not determinative. 2017 MCSF 2.01(E)(4)(e). Pursuant to the MCSF, we conclude that the trial court did not err by disallowing several of defendant's business expenses. *Carlson*, 293 Mich App at 205.

Further, the trial court did not err by basing its imputation of defendant's income, in part, on Parker's income. When calculating child support, the trial court may consider imputed income as well as actual income. *Carlson*, 293 Mich App at 205. Before doing so, the trial court must find that the parent's reduced income reflects a voluntarily unexercised ability to earn. *Id*. at 206; MCSF 2.01(G)(1). Relevant factors to consider when imputing income include, among other things, a parent's prior employment experience and history, availability for work, and

---

[1] Parker referred to himself as a subcontractor during the trial, but also agreed with his characterization as "partner."

[2] An enrolled agent is a tax advisor authorized by the Internal Revenue Services to represent taxpayers before it. See https://www.irs.gov/tax-professionals/enrolled-agents/enrolled-agent-information (last visited July 31, 2017).

evidence that the parent is able to earn the imputed income. 2017 MCSF 2.01(G)(2). This requires finding whether the parent had an actual ability and likelihood of earning the imputed income. *Carlson*, 293 Mich App at 205.

In this case, plaintiff testified that defendant made over $300,000 a year as an independent contractor in 2013. Ray Ward, a vice president of the company with which defendant contracted, testified that he had set a sales quota for defendant of $300,000 to $350,000 per quarter on the basis of defendant's past earnings, for which defendant and Parker together would receive a 26% commission. Parker testified that as an independent contractor who was splitting commissions with defendant, he had made $76,604.28 for the first seven months of 2015.[3] Based on an average of $10,943.47 a month for those seven months, Parker's projected salary for the year was $131,321.62. By contrast, Tallis testified that defendant's projected annual income was $87,428 a year, after accounting for the business expenses.

For the purposes of calculating child support, the court concluded, "I think it's fair to use the self-employment gross amount of $132,000. I think that's fair and reasonable." After excluding several of the claimed business deductions, the trial court calculated defendant's projected income for child support purposes to be in the $90,000 range, but the trial court found that this did not reflect defendant's actual ability to earn and defendant was "in a position to be able to do more." The trial court determined that it was "fair and reasonable" to impute to defendant a yearly income of $132,000 for the purposes of calculating child support. The trial court's decision was within the range of reasonable and principled outcomes because it was consistent with defendant's historical earning ability, Ward's sales quotas, and Parker's expected earnings. *Id.*

Defendant also argues that the trial court abused its discretion by failing to impute income to plaintiff. We disagree. Plaintiff is employed part-time as a music teacher for Okemos Public Schools, making about $32,000 a year. She was previously employed full-time, making about $52,000 a year. Plaintiff took a one-year leave of absence in order to attend to issues related to the parties' children. Plaintiff testified she was told at the time that she would be given her same job back after her leave of absence had ended, but when she informed the school system that she wanted to return, she was told that her position had been filled. She testified that her union chose not to pursue a grievance on her behalf. Plaintiff then applied and interviewed for full-time positions in Haslett, East Lansing, Lansing, and Okemos. She was not hired for any of these positions. She had also done small amounts of additional part-time work, such as teaching voice and giving piano lessons, food preparation, and doing administrative work at her church.

Defendant offered no evidence establishing that plaintiff was not actively seeking full-time employment in her field or that additional legal remedies were available regarding her contract with Okemos schools. Therefore, the trial court did not clearly err when it found that

---

[3] The partner testified that they were paid near the end of the month, and that the last payment he received in August was for sales through the end of July. The partner testified that he expected to be paid approximately $11,000 in September, presumably for sales in August.

plaintiff's reduced income was involuntary, *Beason*, 435 Mich at 805, or abuse its discretion in declining to impute additional income to plaintiff. *Carlson*, 293 Mich App at 205.

Finally with regard to child support, defendant argues that the trial court erred by arbitrarily assigning to him 117 overnights per year as his parenting-time offset for child support. When applying the MCSF, the trial court must offset child support by the number of overnights the child spends with a parent. *Ewald*, 292 Mich App at 718; 2017 MCSF 3.03(A). The trial court must apply the offset on the basis of the "[a]pproximate" number of overnights that each parent will likely provide care for the children-in-common. 2017 MCSF 3.03(A)(2).

Defendant's argument that the trial court was impatient and did not analyze the actual number of overnights is not supported by the record. The record reveals that the trial court's determination that defendant received 117 overnights reflected a reasonable approximation of the number of actual overnights the children would spend with defendant in a year, arrived at after lengthy mathematical calculation and with input from both parties.

## B. SPOUSAL SUPPORT

Defendant next argues that the trial court failed to analyze the spousal support factors before awarding plaintiff $711 a month in spousal support for one year. We disagree. The objective of spousal support is to balance the incomes and needs of the parties in a way that is just and reasonable under the circumstances of the case. *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). To determine whether spousal support is just and reasonable, the trial court should consider a wide variety of factors, including the following:

> (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay spousal support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the prior standard of living of the parties and whether either is responsible for the support of others; (11) contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Id.* at 726-727 (citation omitted).]

In this case, the trial court made findings on several of these relevant factors when considering the appropriateness of spousal support. The court found that the parties were married for seven years and were young. The court found that they had similar health problems, with plaintiff suffering from depression and anxiety, and defendant suffering from substance abuse.[4] The court noted that plaintiff had a profession but was not fully employed in that profession. The court also reasoned that plaintiff "needs to become fully employed." "I think whatever spousal support I order[,]" the court explained, "should only run for a year from this

---

[4] Defendant also testified to certain mental health issues.

date." The trial court was not involved in the parties' property settlement and the parties offered no evidence about their past relations and conduct, present situations, standards of living, fault, and cohabitation.

The trial court need not make findings on every factor, but it should "make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003). The trial court did so on the record. Therefore, defendant's assertion that the trial court entirely failed to make findings regarding the spousal support factors is without merit.

## C. RETROACTIVE MODIFICATION OF SUPPORT ORDER

Finally, defendant argues that the trial court abused its discretion when it failed to retroactively modify defendant's support order to reflect that he was no longer making an income of $300,000 a year, and to require the return of spousal and child support payments made from the time defendant objected to the conciliator's recommendations until the judgment of divorce was entered. Again, we disagree. Pursuant to MCL 552.603(2), a support order that is part of a domestic relations judgment is only subject to retroactive modification for the period during which there is a pending petition for modification. "This section does not apply to an ex parte interim support order or a temporary support order[,]" however. MCL 552.603(3). With regard to child support, such support is for the benefit of the child, and this Court disfavors retroactive modifications of support payments. *Fisher v Fisher*, 276 Mich App 424, 428-429; 741 NW2d 68 (2007). "[P]arents should be able to rely on not only *receiving* the payments that are ordered, but also on *using* them[,]" and should not fear having to reimburse child support in the future. *Id*. For this reason, there is a strong need for the payers of child support to appraise a trial court "in a timely manner of significant changes in economic circumstances." *Id*. at 430.

On January 4, 2016, defendant objected to the conciliator's recommendations in part on the basis that his income had been reduced. However, defendant did not raise this issue at the March hearing held on his objections. When the trial court's decision on his objections did not address child and spousal support, defendant also did not move for reconsideration or draw attention to the issue in any other way. And when plaintiff filed a motion to show cause for failure to pay child support, defendant stipulated to adjourn a hearing on that motion until trial. Therefore, although defendant initially apprised the court of his changed economic circumstances, he did not follow up by actively seeking modification of his support obligation. Given the strong policy in favor of allowing custodial parents to rely on received child support payments, and the fact that defendant raised but did not actively pursue the issue, the trial court's decision to modify defendant's child and spousal support obligations prospectively only was within the reasonable and principled range of outcomes. See *Fisher*, 276 Mich App at 430; see also *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010) (noting that this Court does not favor allowing parties to seek relief from errors to which they contributed below).

We affirm the trial court with respect to the issues raised in defendant's appeal.[5]

### III. PLAINTIFF'S CROSS-APPEAL

In her cross-appeal, plaintiff argues that the trial court erred by changing the children's legal custody from sole to joint, because it failed to determine the established custodial environment of the children and failed to apply the proper burden of proof in changing to joint legal custody. She also argues the court's best-interest analysis was flawed. We disagree in all respects. We review the trial court's finding regarding the existence of an established custodial environment to determine whether it is against the great weight of the evidence. *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010). Regarding the ultimate custody award, we must affirm the trial court unless its factual findings were against the great weight of the evidence, it palpably abused its discretion, or it made a clear legal error on a major issue. MCL 722.28. The trial court's factual findings are against the great weight of the evidence only if the evidence clearly preponderates in the opposite direction. *Pierron*, 486 Mich at 85. In the child custody context, the trial court abuses its discretion when its result so palpably violates fact and logic that it constitutes an exercise of passion or bias rather than of reason. *Shulick v Richards*, 273 Mich App 320, 324; 729 NW2d 533 (2006).

### A. ESTABLISHED CUSTODIAL ENVIRONMENT

Before making any decision that would affect the welfare of a child involved in a custody dispute, the trial court must determine whether the decision would modify the child's established custodial environment. *Pierron*, 486 Mich at 85. An established custodial environment is the environment in which the child naturally looks to the custodian for love, affection, guidance, necessities, and parental comfort. MCL 722.27(1)(c). If a proposed modification would change the child's established custodial environment, the moving party must show by clear and convincing evidence that the change is in the child's best interests. *Pierron*, 486 Mich at 86.

On the first day of trial, the trial court indicated that the children had an established custodial environment with plaintiff and that it would apply a clear and convincing evidence standard to its decision: "[T]he established custodial environment, from a legal standpoint, is with the mother. Sole custody with the mother. . . . So [defendant's] going to have to prove to me by clear and convincing evidence that all these—and not all the factors weigh towards the issue of legal custody." The parties did not dispute that determination. Plaintiff's arguments on appeal that the trial court did not determine the children's custodial environment and did not apply the appropriate standard of proof are without merit.

Further, it is clear from the record that the trial court determined that a change of legal custody from sole to joint would change the children's established custodial environment, and thus that defendant was required to present clear and convincing evidence that such a change was

---

[5] As discussed below, this includes the issue of child dependency tax credits raised by both parties.

in the children's best interests. The trial court in fact took great pains to impart to defendant's counsel the need to support his position with clear and convincing evidence, especially concerning defendant's mental health issues and improvements in the parties' ability to communicate on issues involving the children. Plaintiff's citation to an unpublished case where we remanded the case to the trial court because the trial court had failed to determine whether the change of legal custody would change the children's established custodial environment is inapposite here.

## B. BEST-INTEREST DETERMINATION

MCL 722.26a(1) provides the requirements for considering a joint custody award:

At the request of either parent, the court shall consider an award of joint custody, and shall state on the record the reasons for granting or denying a request. In other cases joint custody may be considered by the court. The court shall determine whether joint custody is in the best interest of the child by considering the following factors:

(a) The factors enumerated in [MCL 722.23].

(b) Whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child.

MCL 722.23 enumerates the following factors for consideration:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

The trial court need not mathematically calculate its custody determination or give equal weight to the best-interest factors when making its custody decision. *Berger*, 277 Mich App at 712.

Plaintiff primarily disputes the trial court's factor (k) finding regarding domestic violence, MCL 722.23(k). Plaintiff testified that defendant emotionally abused her throughout the marriage, and her counselor testified that defendant's behavior was emotionally abusive. Defendant testified that the marriage had a high degree of conflict, but that he did not believe he was emotionally abusive. The trial court found that the parties' conflicts did not rise to the level of domestic violence.

The court's finding was not against the great weight of the evidence. Regarding the parties' conflicting testimony, the court was in the best position to assess the credibility of the witnesses. *Berger*, 277 Mich App at 705 ("This Court will defer to the trial court's credibility determinations . . . ."). Plaintiff's counselor testified that she based her analysis of defendant's behavior on her belief that plaintiff showed signs of being the victim of a narcissist (presumably a person with narcissistic personality disorder). However, the counselor testified that she was not treating defendant and had not been able to diagnose him, and she was not aware that defendant had been diagnosed with any personality disorders.

Regarding the remaining factors, the trial court found that factor (b) slightly favored plaintiff because she was continuing to raise the children in their religion. Plaintiff testified that she took the children to church, but that defendant did not even though they had chosen the children's church together. This finding was not against the great weight of the evidence because it was consistent with plaintiff's testimony. See *id*.

The trial court found that factors (a), (c), (f), (g), (h), and (j) were balanced evenly between the parties. Regarding factor (a), plaintiff testified that she was the children's primary caretaker. She had home-schooled her daughter. Defendant testified that he had read to the children every night since they were 18 months old. Defendant testified that he was extensively involved in the children's activities. The trial court found that both parents loved and were bonded with the children. The trial court's finding was not against the great weight of the evidence because it was consistent with the testimony of the parties. See *id*.

Regarding factor (c), plaintiff testified that she made $32,000 a year as a part-time teacher. She historically made the children's doctors' appointments and arranged their activities. Defendant was found to have a significant income. Defendant testified that he was actively involved in the children's medical care and was passionate about their needs. The trial court's finding that this factor was balanced evenly between the parties was not against the great weight of the evidence because both parents could meet the children's needs. See *id.*

Regarding factor (f), plaintiff testified that defendant was not an honest person, that he had been the subject of criminal investigation, and that he had been convicted of forging prescription medications. Defendant testified that he was on probation but that before his conviction he had had no involvement with the criminal justice system. He said he was doing well on probation and in substance abuse treatment. The trial court found that defendant was addressing his problems and they did not affect his ability to make decisions about the children. This was consistent with defendant's testimony, and was not against the great weight of the evidence. See *id.*

Regarding factor (g), plaintiff's counselor testified that plaintiff had anxiety and significant symptoms of posttraumatic stress disorder (PTSD). The counselor also testified that besides the problems of her relationship with defendant, plaintiff had also dealt with other traumas in her life, including being sexually abused as a child and witnessing her father's suicide. Defendant testified that he suffered from anxiety, stress, and hyperactivity. Defendant testified, however, that since plaintiff filed for divorce he had been seeing a psychiatrist for medication management and psychotherapy, as well as attending group therapy. Defendant further testified that in June 2016 he had switched to a local psychiatrist rather than having sessions remotely with an out of state psychiatrist via video chat. The trial court found, consistent with the testimony that both parties had mental health issues, but that neither party's issues were major enough to preclude joint legal custody and that both were addressing their issues through treatment. This finding was not against the great weight of the evidence. See *id.*

Regarding factor (h), plaintiff testified that defendant was rude at a meeting addressing their boy's educational needs. Defendant testified that he was not rude but was simply concerned that the educational team had not lined up appropriate specialists to address his son's needs. The trial court's finding that this factor favored neither parent was not against the great weight of the evidence because there was no evidence that defendant's behavior had disrupted his son's schooling. See *id.*

Regarding factor (j), plaintiff testified that defendant spoke badly about her to the children. Defendant denied this allegation. The parties had been communicating by means of Our Family Wizard. Joint legal custody is appropriate when, "[w]hile there was certainly evidence presented that the parties harbored some personal animosity and had some difficulty communicating in the past, both parties testified that their communications had recently improved." *Schulick*, 273 Mich App at 326-327. The parties' ability to compromise regarding major issues, such as working out a holiday schedule, may also indicate that joint legal custody is appropriate. *Id.* at 327. The trial court found that both parties were able to facilitate a relationship with the other, albeit with the assistance of a computer program, about legal decisions relating to the children. The trial court's finding was not against the great weight of the evidence. See *id.*

Overall, although the record shows that the parties had animosity toward one another, both testified that they had been able to communicate over Our Family Wizard. Defendant testified that their ability to communicate had improved. The parties had also recently compromised on a parenting-time schedule. The record shows that the parties generally agreed about the children's challenges and about how to meet those challenges. They did have disagreements about specifics, but they had also recently demonstrated improved communication and the ability to compromise on parenting time. The evidence did not clearly preponderate in the opposite direction of the trial court's finding that joint legal custody was appropriate. *Pierron*, 486 Mich at 85. Under these circumstances, where the majority of the best-interest factors considered were balanced evenly between the parties, the one factor that favored plaintiff (factor (b)) only did so slightly based on plaintiff's taking the children to church (one of the five listed situations), and the trial court was presented with evidence that defendant had taken steps to address his mental health issues and that the parties had improved their communications and ability to reach an agreement concerning the children's care, the trial court's conclusion that defendant had presented clear and convincing evidence that a change in custody was in the children's best interests did not grossly violate fact and logic. *Pierron*, 486 Mich at 86; *Shulick*, 273 Mich App at 324.

## IV. CHILD DEPENDENCY TAX EXEMPTIONS

Both parties challenge the trial court's award of child dependency tax exemptions. This award is a discretionary ruling that we review for an abuse of discretion. *Carlson*, 293 Mich App at 205. We find no error in the trial court's award. The trial court ruled that as part of child support, each parent could claim one child for tax purposes. Defendant argues that he should have received both exemptions to offset the child support he overpaid. Plaintiff counters that she should have received both exemptions because she is the custodial parent.

A child dependency tax credit may be treated as part of the property settlement or part of child support:

> [W]e are not persuaded that the federal income tax dependency exemption is so intricately related to child support that it would be appropriate to preclude the parties to a divorce action from ever choosing to treat the income tax dependency exemption as a property issue rather than a child support issue. [*Fear v Rogers*, 207 Mich App 642, 646; 526 NW2d 197 (1994).]

The trial court must indicate, however whether it is treating the child dependency tax exemption as part of the property settlement or child support award. *Id*. at 647-648. In this case, the trial court clearly indicated that it was awarding the tax dependency exemptions as part of its child support determination. While the trial court did not state a rationale for doing so, neither parent argued for or against the decision or requested clarification.

Defendant exercised about one third of the parenting time and plaintiff exercised the remaining two thirds. Given that both parents had liberal amounts of parenting time during which they would be providing support for the children and had significant incomes for which they would incur tax obligations, the trial court's decision to award one child dependency tax

exemption to each parent did not fall outside the range of reasonable and principled outcomes, nor was it contrary to existing law. *Carlson*, 293 Mich App at 205.

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle