*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMILY ANN PARFET, formerly known as EMILY
ANN LENNEN,

UNPUBLISHED
February 24, 2022

       Plaintiff-Appellee,

v

No. 355177
Kalamazoo Circuit Court
LC No. 2009-006287-DM

TODD LAINE LENNEN,

       Defendant-Appellant.

EMILY ANN LENNEN, also known as EMILY
ANN PARFET,

       Plaintiff-Appellee,

v

No. 356164
Kalamazoo Circuit Court
LC No. 2009-006287-DM

TODD LAINE LENNEN,

       Defendant-Appellant.

Before: GADOLA, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

This consolidated case[1] arises from a parenting-time dispute. In Docket No. 355177, defendant, Todd Laine Lennen, appeals by right that portion of the trial court's order that granted in part plaintiff's, Emily Ann Parfet's, motion for attorney fees. In Docket No. 356164, defendant appeals by leave granted that portion of the same order that denied his motion regarding parenting

---

[1] *Lennen v Lennen*, unpublished order of the Court of Appeals, entered May 6, 2021 (Docket No. 356164).

time. For the reasons explained in this opinion, we reverse that portion of the order granting plaintiff attorney fees and affirm that portion of the order denying defendant's motion regarding parenting time.

## I. PERTINENT FACTS AND PROCEEDINGS

The parties in this matter were divorced in 2010. The judgment of divorce awarded the parties joint physical and legal custody of their two minor children, JL and LL. During the next few years, each party filed multiple parenting-time motions, prompting one referee to write that the parties "are not able to agree that the sky is blue on any given day." In May 2015, defendant voluntarily ceased exercising parenting time. In 2018, he moved for reunification counseling. The trial court ordered counseling sessions between the children and their individual counselors to determine whether reunification counseling would be appropriate. Subsequently, the trial court ordered all the parties to attend counseling with Dr. Kimberly Lem, after which Dr. Lem would report to the court whether she thought reunification counseling was appropriate, and why. Individual appointments were scheduled for defendant, plaintiff, and each of the children, and a joint session was scheduled for defendant and the children. Meanwhile, the parties stipulated to an order suspending defendant's parenting time. However, before his appointment with Dr. Lem, and less than a month before the scheduled joint session with his children, defendant canceled his appointment and withdrew without explanation his motion for reconciliation counseling. Left in place as the governing parenting-time order was the order suspending defendant's parenting time.

In 2020, defendant moved to modify the order suspending his parenting time, requesting reunification counseling and the eventual restoration of unsupervised parenting time. The trial court held a three-day evidentiary hearing, at which the following witnesses testified: several therapists, defendant, plaintiff, and Matthew Catherwood (plaintiff's former live-in boyfriend and defendant's key witness). On the first day of the hearing the trial court appointed a lawyer-guardian ad litem (L-GAL) to represent the children. The therapists testified that the children were not then interested in having contact with their father. The L-GAL, who described the children as angry, hurt, and confused about defendant's behavior, confirmed this. The L-GAL otherwise described the children in glowing terms. She characterized JL as a "very, very, sharp, well-spoken, respectful young man," and LL as "an amazing, beautiful, smart, young lady." The gist of Catherwood's testimony was that plaintiff portrayed defendant "in a horrible light" to him and the children, and that he and plaintiff had coached the children to tell their respective therapists that they did not want to see defendant. Catherwood further testified that after he and plaintiff broke up, as he was packing his belongings to move out of the house, he came across a letter that caused him to reevaluate his opinion of defendant and prompted him to contact defendant.

Ruling from the bench, the trial court found that defendant had not shown proper cause or a change in circumstances warranting review of the governing parenting-time order. Nevertheless, the court proceeded to review the parenting-time factors, MCL 722.27a(7), and the best-interest factors, MCL 722.23, and to consider defendant's parenting-time history. The court denied defendant's motion, and continued the appointment of the L-GAL, ordering her to meet with the children every six months until further order of the court and to report to the court and the parties' attorneys any change in the children's preferences regarding having contact with defendant. The court also granted in part plaintiff's motion for attorney fees, awarding her the fees incurred in defense of defendant's 2018 motion for reunification counseling. This appeal followed.

-2-

## II. DOCKET NO. 355177

Defendant contends that the trial court erred by granting in part plaintiff's motion for attorney fees incurred in 2018 and 2019 to defend his motion for reunification counseling. We agree.

This Court reviews "a trial court's grant or denial of attorney fees for an abuse of discretion." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

"Michigan generally follows the 'American rule' regarding attorney fees, which provides that fees are not generally recoverable unless a statute, court rule, or common-law exception provides otherwise." *Silich v Rongers*, 302 Mich App 137, 147-148; 840 NW2d 1 (2013). The common-law exception to the American rule authorizes an award of legal fees when "the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation." *Reed*, 265 Mich App at 164-165 (quotation marks and citation omitted).

Generally, conduct that this Court has considered sufficiently unreasonable to support an award of attorney fees contains an element of bad faith. For example, in *Cassidy v Cassidy*, 318 Mich App 463, 486; 899 NW2d 65 (2017), this Court affirmed an award of attorney fees based in part on the defendant's "continuous deception and pattern of behavior." The defendant's misconduct included "failing to comply with discovery, lying to the court, trading in his Cadillac for a Volt without court permission, failing to pay spousal support, failing to pay the mortgage on the marital home, dissolving [a company the defendant managed] without court permission, and hiding proceeds of the sale of his H-1 Hummer." *Id*. Other examples of alleged misconduct, not all of which supported an award of attorney fees under the common-law exception, include the deliberate attempt to deflate the value of stock, *Hanaway v Hanaway*, 208 Mich App 278, 298; 527 NW2d 792 (1995); unnecessarily prolonging proceedings with "spurious claims and allegations," *Thames v Thames*, 191 Mich App 299, 310; 477 NW2d 496 (1991); and taking obstructionist positions, *Rogner v Rogner*, 179 Mich App 326, 330; 445 NW2d 232 (1989). By contrast, behavior not committed in bad faith generally may not support an award of attorney fees under the common-law exception. See, e.g., *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007) (dilatory tactics purportedly designed to frustrate the other party did not support an award of attorney fees when there was no record evidence that the actions complained of were not taken in good faith).

The trial court granted plaintiff's motion for attorney fees on the basis that defendant fought in court and won the reunification counseling he requested. Then, just as the final round of counseling to determine the appropriateness of reunification was to begin, defendant became frustrated with "the system" and suspicious that plaintiff was working the system to her advantage. He canceled his counseling appointment and withdrew his motion. The court characterized defendant's action as pulling the rug out from under the children again. Under the circumstances, defendant's withdrawal of his motion might call into question his level-headedness, patience, and commitment to his children and the hard work of reunification, among other things, but his withdrawal of the motion does not align with the type of misconduct identified earlier. There is

no evidence that defendant was affirmatively acting in bad faith when he withdrew the motion, i.e., that he was not genuinely frustrated and convinced that the process would not bear fruit. It is hard to deny that defendant's withdrawal was unreasonable, but Michigan caselaw shows that "unreasonable" understood in the context of the common-law exception at issue means something more than simply irrational. It refers to conduct that often is improper on its face and not to be condoned. See *Hanaway*, 208 Mich App at 298 (identifying as unreasonable conduct the intentional attempt by the defendant in a divorce action to deflate the value of his stock, behavior the trial court denounced "as conduct that could not be condoned").[2] The present defendant's withdrawal of his motion may have been irrational, but it was not conduct that was improper on its face and not to be condoned, and no proof was presented that his conduct was rooted in bad faith.

Further, defendant's withdrawal of his motion was not "conduct in the course of the litigation" that forced plaintiff to incur fees. See *Reed*, 265 Mich App at 165. Plaintiff does not claim that defendant's withdrawal of his motion forced her to incur fees in 2019. It is likely that the attorney fees at issue were for legal services rendered in defense of defendant's motion for reunification counseling and were incurred before defendant withdrew his motion. Neither plaintiff nor the trial court has indicated that defendant's conduct before he withdrew the motion was unreasonable or forced plaintiff to incur unnecessary fees.

In sum, although defendant's withdrawal of his motion was baffling, it was not conduct of the type typically deemed "unreasonable," or improper, or misconduct for the purpose of imposing attorney fees as a sanction under the common-law exception to the "American rule" regarding legal fees. Plaintiff has not alleged that defendant committed misconduct that forced her to incur unnecessary fees before defendant withdrew his motion nor that she incurred fees on account of defendant withdrawing his motion. For these reasons, we agree with defendant that the trial court abused its discretion by awarding plaintiff attorney fees incurred in defending defendant's 2018 motion for reunification counseling, and we reverse that portion of the trial court's September 29, 2020 order awarding plaintiff attorney fees.[3]

---

[2] The conduct did not support a grant of attorney fees, however, because the plaintiff did not establish that the attempt to deflate the stock's value "hindered plaintiff in discovering the value of those assets and forced her to incur greater expense than she otherwise would have incurred." *Hanaway*, 208 Mich App at 299.

[3] Given our disposition of this issue, we need not consider whether plaintiff's motion for attorney fees was untimely. In addition, in his statement of issues presented, defendant claims that the trial court erred by not holding plaintiff in contempt for repeated violations of the parties' judgment of divorce and the trial court orders regarding travel. We do not address that issue because it is outside the scope of the appeal in Docket No. 355177. On November 3, 2020, this Court issued an order limiting defendant's appeal in Docket No. 355177 to that portion of the September 29, 2020 order granting plaintiff attorney fees, and dismissing without prejudice the remaining issues for lack of jurisdiction. *Lennen v Lennen*, unpublished order of the Court of Appeals, entered November 3, 2020 (Docket No. 355177).

-4-

## III. DOCKET NO. 356164

### A. STANDARD OF REVIEW

"Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Luna v Regnier*, 326 Mich App 173, 179; 930 NW2d 410 (2018) (quotation marks and citation omitted). A trial court's finding is against the great weight of the evidence when it is so contrary to the weight of the evidence that it is unwarranted or is so plainly a miscarriage of justice that it would warrant a new trial. *Fletcher v Fletcher*, 447 Mich 871, 877-878; 526 NW2d 889 (1994). In reviewing the findings, however, we defer to the trial court's determination of credibility. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). A palpable abuse of discretion is one that results in a result "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Fletcher*, 447 Mich at 879-880 (quotation marks and citation omitted). We review questions of law for clear legal error. See *id*. at 877. "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009) (quotation marks and citation omitted).

### B. PROPER CAUSE OR CHANGE IN CIRCUMSTANCES

Defendant contends that the trial court erred by finding that neither proper cause nor a change in circumstances existed to warrant revisiting the governing parenting-time order. We disagree with defendant.

A trial court may amend a previous judgment or order in a custody dispute if it is in the child's best interests and the moving party shows "proper cause" or a "change in circumstances." MCL 722.27(1)(c). If a proposed parenting-time modification changes the child's established custodial environment,[4] the court should apply the "proper cause" and "change of circumstances" framework found in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003). If the proposed parenting-time modification does not change the child's established custodial environment, the more expansive approach to "proper cause" and "change of circumstances" found in *Shade v Wright*, 291 Mich App 17, 28-31; 805 NW2d 1 (2010), applies. See *Kaeb v Kaeb*, 309 Mich App 556, 571; 873 NW2d 319 (2015). In *Vodvarka*, this Court held that "in order to establish a 'change of circumstances,' a movant must prove that . . . the conditions surrounding custody of the child, which have or could have a *significant* effect of the child's well-being, have materially changed. *Vodvarka*, 259 Mich App at 513 (emphasis in original). The Court went on to state that "the evidence must demonstrate something more than the normal life changes (both good and bad)

---

[4] "An established custodial environment is one of significant duration in which the relationship between the custodian and child is marked by qualities of security, stability and permanence." *Mogle v Scriver*, 241 Mich App 192, 197; 614 NW2d 696 (2000) (quotation marks and citations omitted). An established custodial environment can exist in more than one home. *Id*. at 197-198.

that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514. The movant has the burden of establishing either proper cause or a change in circumstances by a preponderance of the evidence. See *Corporan*, 282 Mich App at 606.

Defendant first asserts that the trial court's finding that proper cause to revisit the governing parenting-time order did not exist was clearly erroneous because the great weight of the evidence established that plaintiff obstructed defendant's reunification efforts by coaching the children to tell their therapists that they did not want contact with defendant, by purposefully delaying their counseling appointments, and by making negative comments about defendant to the children.

As to coaching, Catherwood testified that he knew JL did not want to see defendant, and before JL's appointment with his therapist, he encouraged JL to "stick to [his] guns." However, Catherwood's description of his conversation with JL does not suggest that he pressured JL to do anything that he did not want to do or was hesitant to do. Instead, he merely encouraged him to remain firm in a decision that he had already made. In addition, although Catherwood testified that plaintiff was supposed to have a similar conversation with LL, he said that he never saw plaintiff have that conversation and plaintiff did not tell him the details of what she was going to say to LL. She only told him that "it was done and she had the conversation of what needed to be done to essentially keep [defendant] from coming back into their life." In light of Catherwood's limited testimony on the issue of coaching, and deferring to the trial court's assessment of Catherwood's credibility, we cannot say that the evidence preponderated against the trial court's finding that plaintiff did not interfere with defendant's reunification efforts by coaching the children.

Likewise, the great weight of the evidence does not preponderate against the trial court's finding that plaintiff did not thwart the children's counseling by attending their therapy sessions. Defendant's assertion pertains primarily to plaintiff's presence at some of LL's therapy sessions. LL's therapist, Gruel, testified that plaintiff was present at LL's request, and that it was not unusual for a parent to attend a child's counseling session, particularly if the child felt more comfortable with the parent present. It was only if the parent was interfering in the session or their presence was getting in the way of progress that the therapist would tell them that they could not be there. Gruel did not testify that plaintiff interfered in the session or got in the way of LL's progress.

As to defendant's claim that plaintiff interfered in the children's counseling by delaying appointments, this accusation pertains primarily to the gap between LL's appointment with Gruel on April 10, when she received a disturbing letter in which defendant revealed accusations the plaintiff had made against him in the past, and the follow-up appointment on May 13. Defendant contends that plaintiff intentionally delayed the appointment so that, by the time the May appointment rolled around, LL had changed her mind and did not want to see him. This is mere speculation. No evidence suggests that plaintiff intentionally delayed the follow-up appointment to give LL time to change her mind about having contact with defendant. Gruel testified that plaintiff wanted an after-school appointment, and that she gave her the first such appointment that she had, which happened to be on May 13. Defendant's suspicions notwithstanding, nothing in the record suggests that LL's talking to her friends between the two appointments and deciding that she did not want to see defendant was attributable to plaintiff.

Regarding negative comments plaintiff made about defendant, Catherwood testified that she would tell JL that defendant was "a piece of shit" and "a fucking loser." Nothing in the testimony at the evidentiary hearing indicates how frequently plaintiff used such language about defendant to the children or under what circumstances. No evidence suggests that plaintiff fed the children a constant diet of vitriolic comments about defendant. In fact, plaintiff testified that, in time, she and the children stopped talking about defendant. "It'd come up and it was just sort of like let's not give him any energy." That the family did not often talk about defendant is confirmed by Dr. Beer's observation that when JL first came to see him, one of the things he wanted to do was to talk more about his father. The L-GAL reported that she did not think that plaintiff had been bad-mouthing defendant to LL. Notwithstanding Catherwood's testimony and the trial court's acknowledgment that plaintiff likely said negative things about defendant, given the circumstances of his absence from the children's lives, the record does not preponderate against the trial court's implied finding that plaintiff's negative comments about defendant did not establish proper cause to revisit the governing parenting-time order. On the basis of our review of the evidence, we find no error in the trial court's finding that defendant failed to establish proper cause.

Defendant next argues that even if he did not establish proper cause, Catherwood's departure from the children's lives deprived them of a stepfather figure, which constituted a change in circumstances sufficient to warrant revisiting the parenting-time order.

Although the trial court stated more than once that it did not find a change in circumstances, it did not specifically address whether plaintiff and Catherwood's break-up constituted such a change. Relying on *Vodvarka*, 259 Mich App at 513, plaintiff argues that, in order to show a change in circumstances sufficient to warrant revisiting the governing parenting-time order, defendant must show " 'something more than the normal life changes (both good and bad) that occur during the life of a child.' " Under the circumstances of this case, we agree. By the time of his 2020 motion to restore his parenting time, defendant had not exercised parenting time with the children for five years. Consequently, the children no longer had an established custodial environment with defendant. Defendant was therefore required to demonstrate something more than normal life changes in the children's lives in order to establish a change in circumstances. The evidence in the present case established that LL saw Catherwood as a stepfather figure. She occasionally called him "dad" and expressed a desire to spend more time with him. Plaintiff encouraged that "kind of step dad daughter relationship" because LL wanted it. Plaintiff testified that Catherwood was a good influence on LL until he "started to get aggressive with JL." There is no evidence that JL had the same type of relationship with Catherwood that LL did. In fact, Catherwood testified that, regardless of how hard the two of them tried, he and JL "always clashed heads a little bit."

The trial court's conclusion that Catherwood's departure from the home did not constitute a change in circumstances sufficient to trigger a review of the custody arrangement under *Vodvarka* was not against the great weight of the evidence. While LL had a closer relationship with Catherwood than JL did, we cannot conclude with respect to either child that the end of plaintiff's relationship with her live-in boyfriend is more than a normal life change that should trigger a review of whether defendant, who had been out of the children's lives for five years, should have his parenting time restored. Catherwood's departure would appear to have little bearing on whether *defendant* should regain the ability to be in his children's lives following a

five-year absence. We agree with the trial court that this did not constitute a "material change" in circumstances that would "almost certainly have an effect on the child[ren]" necessary to trigger a custody review *vis a vis* defendant. *Id*. at 513-14. The trial court's findings that defendant did not establish either proper cause or a change in circumstances were not against the great weight of the evidence and are, therefore, affirmed.

Given our conclusion that defendant did not establish proper cause or a change in circumstances with respect to either child, we need not review the trial court's analysis of the best interest factors.

## C. MCL 722.27A(3)

Lastly, challenging the procedure the trial court used to decide his parenting-time motion, defendant contends that the trial court erred by failing to address the probability that continued suspension of defendant's parenting time would endanger the children's physical, mental, or emotional health, as required by MCL 722.27a(3). Once again, we disagree.

Generally, this Court reviews questions of law for clear legal error. See *Fletcher*, 447 Mich at 877. "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Corporan*, 282 Mich App at 605 (quotation marks and citation omitted).

Defendant relies on *Rozek v Rozek*, 203 Mich App 193; 511 NW2d 693 (1993), to argue that MCL 722.27a(3) required the trial court to find by clear and convincing evidence that parenting time would endanger the children's physical, mental, or emotional health before it denied defendant's current motion regarding parenting time. Defendant is mistaken.

In *Rozek*, the trial court entered a judgment of divorce that suspended the plaintiff-father's right to visitation with his minor children on the basis of the trial court's finding after a seven-day divorce trial that "a preponderance of the evidence indicated it would be in the best interests of the children to temporarily terminate plaintiff's visitation." *Id*. at 194. On appeal, this Court held that the trial court improperly used a "preponderance of the evidence" standard when MCL 722.27a(3) requires the court to use a "clear and convincing" standard. *Id*. Remanding the case to the trial court for a new hearing regarding the plaintiff's visitation rights, this Court stated, "[b]efore an order maintaining plaintiff's suspension of visitation can enter, the court must find by clear and convincing evidence that visitation would endanger the children's physical, mental, or emotional health." *Id*. at 194-195.

*Rozek* involved a challenge to the order that suspended the defendant-father's parenting time. In the present case, however, defendant moved for modification of the governing parenting-time order, an order to which he had agreed. Under MCL 722.27(1)(c), a trial court may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances," if modification would be in the best interests of the child. *Vodvarka*, 259 Mich App at 508-509 (quotation marks omitted). Once proper cause or change in circumstances is shown, the court determines whether and with whom the child has an established custodial environment, which governs the movant's burden of proof to show that the modification is in the child's best interests. *Id*. at 509. If the proposed modification would change the established custodial environment, as here, the movant must show by clear and convincing evidence that the

-8-

modification is in the child's best interests. MCL 722.27(1)(c). Only if the movant meets this burden may the trial court modify the governing parenting order. *Id*. This is the procedure generally followed by the trial court in the present case. Accordingly, we find no error.

We reverse the trial court's award of attorney fees to plaintiff in Docket Number 355177. In Docket Number 356164, we affirm the trial court's finding that defendant failed to demonstrate proper cause or change of circumstances sufficient to trigger a review of the governing parenting time order, and we therefore decline to reach the issues related to the best interests of the children.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron