*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JASON P. MATTHEWS,

　　　　　Plaintiff-Appellant,

v

MICHELLE R. MATTHEWS,

　　　　　Defendant-Appellee.

UNPUBLISHED
November 10, 2022

No. 360573
Kent Circuit Court
LC No. 19-003512-DM

Before: SAWYER, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Jason P. Matthews, appeals as of right the trial court's divorce judgment. On appeal, plaintiff asserts that the trial court erred by awarding sole legal custody of the parties' children to defendant, Michelle R. Matthews, and modifying the parenting-time schedule on the basis of defendant's unsupported testimony that one of the children was struggling with the existing schedule. In addition, plaintiff contends that the court erred by retroactively modifying child support payments made during the course of the proceedings because defendant never sought to modify those payments. For the reasons explained in this opinion, we affirm the portions of the judgment of divorce that concern the legal custody of the children and the parenting-time schedule. However, we conclude that the trial court erred by retroactively modifying child support payments. Therefore, we reverse that portion of the judgment and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The appeal arises out of the parties' divorce, specifically the trial court's determinations concerning legal custody, parenting time, and child support. The parties were married on December 19, 2012. They had two children during the marriage: PM and MM. The parties separated on March 16, 2019. Plaintiff filed a complaint for divorce on April 23, 2019. On April 29, 2019, defendant filed an answer and counterclaim for divorce, asking for child support pursuant to the state formula and spousal support.

The parties attended mediation and agreed upon a temporary parenting-time schedule for the summer of 2019. That schedule essentially consisted of the parties exchanging the children

-1-

every two or three days on a three-week rotation. This schedule allowed plaintiff 10 overnights with the children, while defendant had 11 overnights.

The trial court held a five-day bench trial to consider witness testimony and evidence presented by the parties. Following trial, the court issued a written opinion in which it granted defendant's request for sole legal custody of the children and accepted her proposed parenting-time schedule. Further, the court accepted defendant's request that child support commence on May 1, 2019, because her answer and counterclaim for divorce was filed on April 29, 2019. Given that child support payments commenced on May 1, 2019, the court ordered that plaintiff owed an arrearage of $5,665 through September 30, 2021. The trial court later issued a judgment of divorce consistent with its written opinion and order.

This appeal followed.

## II. ANALYSIS

On appeal, plaintiff challenges the portions of the judgment of divorce that concern the legal custody of the children, the parenting-time schedule, and the commencement of child support.

## A. STANDARD OF REVIEW

"All orders and judgments of the circuit court regarding child custody and parenting time are to be affirmed unless the trial court made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Demski v Petlick*, 309 Mich App 404, 444; 873 NW2d 596 (2015). See MCL 722.28. As a result, "a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderate[s] in the opposite direction." *Id*. (quotation marks and citation omitted; alteration in original). "In reviewing factual findings, this Court defers to the trial court's determination of credibility." *Id*. at 445. Moreover,

> The trial court's discretionary rulings, such as to whom to award custody, are reviewed for an abuse of discretion. An abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. [*Id*. (quotation marks and citation omitted).]

## B. LEGAL CUSTODY

First, plaintiff challenges the trial court's analysis of the best-interest factors and asserts that the trial court abused its discretion by granting defendant's request for sole legal custody. We disagree.

MCL 722.27 concerns the powers of the trial court in a child-custody dispute. In pertinent part, MCL 722.27(1)(c) provides that "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child."

In this case, the trial court concluded that the children's established custodial environment existed with both parties. "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). In addition, the court found that defendant's request for sole legal custody would alter the children's established custodial environment; therefore, she was required to show that the change in custody was in the children's best interests by clear and convincing evidence. The parties did not dispute this finding in the trial court, and plaintiff does not challenge it on appeal. As a result, we will accept this conclusion for purposes of this opinion.

"[C]ustody disputes are to be resolved in the child's best interests, and [g]enerally, a trial court determines the best interests of the child by weighing the twelve statutory factors outlined in MCL 722.23." *Demski*, 309 Mich App at 446 (quotation marks and citation omitted; alterations in original). MCL 722.23 contains the following factors:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
>
> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (f) The moral fitness of the parties involved.
>
> (g) The mental and physical health of the parties involved.
>
> (h) The home, school, and community record of the child.
>
> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.
>
> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

"In addition, the court must consider the general level of cooperation and agreement between the parties when considering joint custody." *Dailey v Kloenhamer*, 291 Mich App 660, 667; 811 NW2d 501 (2011) (quotations marks and citation omitted). "When ruling on a custody motion, the circuit court must expressly evaluate each best-interest factor and state its reasons for granting or denying the custody request on the record." *Id.*

In this case, the trial court concluded that Factors (a), (g), (h), and (j) were neutral and did not favor either party. The court determined that Factor (d) slightly favored plaintiff. Further, the court determined that Factors (b), (e), and (f) slightly favored defendant. The court then concluded that Factor (c) favored defendant, and that Factors (e) and (k) strongly favored defendant. The court declined to interview the children to make a finding as to Factor (i). In regard to Factor (*l*), the court observed that the parties had significant disputes over choice of school, counseling, and medical care for the children. Plaintiff challenges the trial court's findings on several of the best-interest factors. He asserts that Factors (b), (c), (e), (k), and (*l*) should have been neutral, and that Factors (f) and (g) strongly favor him.

Factor (b) concerns the capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any. The trial court found that this factor slightly favored defendant. The court explained that both parties showed their capacity to provide the children with love, affection, and guidance, and that both were involved in the children's educations. However, the court expressed its concerns related to some of plaintiff's parenting choices, such as feeding MM hot sauce and locking PM in her room. Defendant also provided testimony that plaintiff would throw items, slam doors, and yell when things did not go as he expected. Moreover, there was evidence that plaintiff abused the family dog on several occasions. The court did not believe that this behavior provided a good example of appropriate behavior to the children. The court acknowledged the testimony presented by plaintiff by witnesses who testified positively concerning his parenting, but the court accepted that his behavior in the privacy of his own home may be different.

On appeal, plaintiff argues that this factor should have been neutral because the testimony presented showed that he was a loving, affectionate father who was involved and engaged with the children. However, the trial court acknowledged this testimony in its conclusion. The court accepted testimony provided by defendant that plaintiff may be different when at home. This Court defers to the trial court's credibility determinations. *Demski*, 309 Mich App at 445. In any event, defendant presented testimony regarding plaintiff's severe punishments and negative reactions to adverse events. She also stated that plaintiff mocked and shamed PM for her feelings. Defendant further testified that she was typically assigned to domestic duties involving the children while plaintiff worked on projects outside, such as the treehouse. Ultimately, the trial court's conclusion that this factor slightly favored defendant is not against the great weight of the evidence. See *id.* at 444.

Next, plaintiff disputes the trial court's findings as to Factor (c), which involves the capacity of the parties to provide the child with food, clothing, medical care, and other material needs. The trial court found that both parties were capable and disposed to provide the children with their basic needs. However, the court acknowledged that defendant had historically made the children's medical appointments. In addition, the court observed that the evidence revealed that plaintiff was inclined to substitute his medical knowledge for that of the children's pediatrician. Importantly, the court explained that the parties had been embroiled in serious disagreements over the children's medical treatment, noting that at trial, plaintiff was unable to cite even one parenting disagreement in which defendant was able to convince him that her position was valid.

On appeal, plaintiff asserts that there was no independent evidence supporting defendant's medical decisions, such that PM needed to wear the walking boot provided by a friend or that MM needed therapy. However, the trial court's conclusion was not against the great weight of the evidence. As will also be addressed in the analysis of Factor (*l*), the parties had significant disagreements in regard to medical decisions involving the children, such as the treatment for PM's ankle sprain, the proper way to handle her COVID-19 diagnosis, and whether the children required counseling services. Defendant testified that plaintiff discouraged PM from using crutches and resting her ankle. He also told defendant, in front of the children, that PM did not need the walking boot. Further, plaintiff testified that he gave MM milk when she asked for it despite admitting that he believed that she had a sensitivity to lactose. As a result, the evidence established that plaintiff second-guessed medical decisions and recommendations provided by defendant. Ultimately, the court's finding that this factor favored defendant was not against the great weight of the evidence. See *id*.

Additionally, plaintiff disagrees with the trial court's conclusion that Factor (e), the permanence, as a family unit, of the existing or proposed custodial homes, strongly favored defendant. In support of its conclusion, the trial court explained that defendant had not introduced the children to any significant others during the pendency of the divorce. The court observed that plaintiff had been in several relationships with women much younger than him and that many of those relationships overlapped. The court noted that plaintiff started dating defendant before his second divorce was final. He began dating another woman a month after the parties separated. He introduced her to the children, and the children became attached to her as she began staying in the family home. Plaintiff had since broken up with her and evidence showed that the children were upset when she was removed from their lives.

Plaintiff argues that this factor should have been neutral because his relationships before the children were born are irrelevant to his parenting. Further, he only introduced the children to his new girlfriend after months of dating and consulting his counselor. At any rate, even ignoring plaintiff's dating history, he started a new relationship approximately one month after separating from defendant, and he introduced her to the children in November 2019. The parties agree that the children liked her. However, plaintiff ended the relationship in October 2020, which had a negative effect on PM and the stability of plaintiff's home. As observed by the Michigan Supreme Court, "[t]he stability of a child's home can be undermined in various ways. This might include frequent moves to unfamiliar settings, a succession of persons residing in the home, live-in romantic companions for the custodial parents, or other potential disruptions." *Ireland v Smith*, 451 Mich 457, 465 n 9; 546 NW2d 686 (1996). Accordingly, the trial court's determination that this factor strongly favored defendant was not against the great weight of the evidence.

In addition, plaintiff challenges the trial court's finding as to Factor (f), which concerns the moral fitness of the parties. The trial court concluded that this factor slightly favored defendant. The court questioned the morality of plaintiff's decision to keep the fact that the parties had gotten married from his family after he testified that he was very close with his family. The court explained that his willingness to tell such "white lies" raised concern regarding parenting should the children become aware of such lies. On appeal, plaintiff asserts that this factor should have strongly favored him because whether he decided to tell his family that he was married has no relationship to how he will function as a parent to his children. In addition, he argues that the court ignored evidence of defendant's extensive marijuana use.

We do not believe that the trial court's conclusion that this factor slightly favored defendant was against the great weight of the evidence. According to plaintiff's own testimony, he separated from his second wife in the summer or fall of 2011. He met defendant in October 2011, and they started spending serious time together in January 2012. His divorce was final in October 2012, and he married defendant in December 2012. However, defendant testified that the parties' wedding was kept secret from his family because he was afraid that they would not approve. The court acknowledged that it was up to plaintiff to determine what to reveal to his family in regard to his private life, but questioned whether his "white lies" concerning such an important life event would affect his parenting. Ultimately, if plaintiff was willing to lie to his family in regard to when the parties got married, he may keep other important information from others if he believes it will portray him in a negative light. Indeed, defendant testified that plaintiff asked her to keep her marijuana use from her doctor, who was plaintiff's supervisor, because he did not want it to reflect poorly on him.

Further, in regard to defendant's marijuana use, although she reported that while living in the marital home she frequently used marijuana to treat her migraines, she testified that she only used "one puff" about once or twice a week during the trial. Moreover, plaintiff testified that marijuana was the only treatment that helped defendant's migraines and that he helped her procure it. As a result, the testimony presented at the trial did not show that defendant's "extensive" use of marijuana affected her ability to care for the children or that plaintiff advocated against its use.

Similarly, plaintiff asserts on appeal that Factor (g), the physical and mental health of the parties, should strongly favor him. The trial court concluded that this factor was neutral and did not favor either party. Plaintiff argues that the court erred by failing to acknowledge defendant's post-traumatic stress disorder (PTSD) diagnosis, which affected her ability to care for the children. However, this argument is not supported by the record. Defendant testified that she suffered from PTSD, which initially limited the number of hours she worked at the child development center. However, during the trial, defendant testified that she was confident in working between 35 and 40 hours a week. Neither party presented any testimony that defendant's PTSD diagnosis affected her ability to care for the children. Rather, defendant testified that she was not experiencing any mental-health symptoms and that no mental or physical conditions impaired her daily life. She also reported that she was no longer taking antidepressants. As a result, considering the testimony provided at trial, the trial court's conclusion that this factor was neutral was not against the great weight of the evidence.

Plaintiff also disagrees with the trial court's conclusion that Factor (k), which concerns domestic violence, strongly favored defendant. Plaintiff contends that this factor should be neutral

because defendant reported to her doctor that she was not a victim of abuse, she invited a friend to engage in a three-way sexual relationship with plaintiff, she engaged in pleasant text-message exchanges with plaintiff, allowed her daughter from a previous relationship to spend time with plaintiff after the separation, and allowed him to take the dog whenever he asked even though she claimed he abused it. In the court's ruling, it explained that while there was little evidence of physical violence between the parties, there was "substantial evidence that showed an imbalance of power and control between the parties." The court acknowledged that plaintiff attempted to combat the allegations by submitting text messages showing a loving relationship between the parties; however, the court specifically found defendant more credible as to the relationship dynamic, noting that domestic violence can be complex and "[w]hat the world sees outside the home often does not reflect what is going on behind closed doors, particularly when it is emotional abuse." The court further wrote that "[s]urvivors of domestic violence often respond by placating the perpetrator as much as possible as a survival mechanism."

Although plaintiff disagrees with the trial court's conclusion as to this factor, that does not mean that the court's conclusion was against the great weight of the evidence. First, this Court must defer to the credibility determinations of the trial court. See *Demski*, 309 Mich App at 445. Second, defendant testified that plaintiff controlled the family's finances; that he belittled defendant so that she felt useless; that he performed severe punishments to the children, including threatening to break her other daughter's ankle and feeding MM hot sauce; and that he physically abused the family dog in the children's presence. Accordingly, the trial court's finding that this factor strongly favored defendant was not against the great weight of the evidence.

Finally, the trial court considered the parties' difficulties regarding academic and medical decisions involving the children in its analysis of Factor (*l*), which concerns any other factors that the trial court believes is relevant to the resolution of a child-custody dispute. On appeal, plaintiff asserts that neither party filed any motions in the 32 months this matter was pending, and that the evidence, including the text messages, showed that the parties were able to work together concerning issues involving the children. However, plaintiff also complains that defendant made decisions concerning the children without informing him. His claim that the parties were able to resolves issues related to the children was contradicted by his testimony and argument. Indeed, plaintiff testified that defendant sent PM to Jenison schools even though there was a pending motion in the court about sending her to Northview schools. Plaintiff also stated that defendant took PM to counseling that he believed was inappropriate and that defendant declined to provide him with the necessary information for the home-based preschool to which she wished to send MM. Plaintiff also admitted that the parties disagreed as to whether PM should attend in-person schooling during the pandemic. Defendant testified that plaintiff did not encourage PM to use the crutches or walking boot supplied by defendant or to rest her ankle. She also reported that plaintiff was against sending MM to counseling, and the parties disagreed as to how to handle PM's COVID-diagnosis. As a result, as observed by the trial court, the evidence supports the conclusion that the parties had significant disagreements concerning school choice, medical treatments, and counseling for the children that would require them to return to court for resolution, and as a result, joint legal custody was inappropriate. See *Dailey*, 291 Mich App at 669 (explaining that the record showed that the parties' acrimony affected their ability to agree on important matters, such as the child's medical treatment, so that awarding one party with sole legal custody was appropriate).

The trial court ultimately concluded that after weighing the best-interest factors, defendant showed that it was in the best interests of the children for her to have sole legal custody by clear and convincing evidence. Plaintiff disagrees; however, this Court is required to affirm a trial court's custody decision "unless the decision is palpably and grossly violative of fact and logic." *Id*. Given the testimony and evidence presented at trial, the court's decision was supported by fact and logic. As a result, the court did not abuse its discretion by awarding sole legal custody to defendant. See *id*.

## C. PARENTING TIME

Plaintiff next contends that the trial court abused its discretion by accepting the parenting-time schedule proposed by defendant that resulted in a reduction of his overnights with the children. We disagree.

MCL 722.27a concerns parenting-time determinations. According to MCL 722.27a(1),

> Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents. Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.

MCL 722.27a(7) provides that the court may consider the following factors when determining the frequency, duration, and type of parenting time to be granted:

> (a) The existence of any special circumstances or needs of the child.

> (b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.

> (c) The reasonable likelihood of abuse or neglect of the child during parenting time.

> (d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.

> (e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

> (f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

> (g) Whether a parent has frequently failed to exercise reasonable parenting time.

> (h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal

custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

>   (i) Any other relevant factors.

>   Both the statutory best interest factors in the Child Custody Act, MCL 722.23, and the factors listed in the parenting time statute, [MCL 722.27a(7),] are relevant to parenting time decisions. Custody decisions require findings under all of the best interest factors, but parenting time decisions may be made with findings on only the contested issues. [*Shade v Wright*, 291 Mich App 17, 31-32; 805 NW2d 1 (2010).]

If a proposed change in the parenting-time schedule would result in a modification to the child's established custodial environment, the burden is on the party proposing the change to establish that the change is in the child's best interests by clear and convincing evidence. *Pierron v Pierron*, 486 Mich 81, 92; 782 NW2d 480 (2010). On the other hand, if the proposed change would not modify the child's established custodial environment, the burden is to show that the change is in the child's best interests by a preponderance of the evidence. *Id*. at 93.

In this case, both parties asked for a change in the parenting-time schedule. Plaintiff proposed a two-week rotation in which he would have parenting time on Monday and Tuesday during the first week, and Wednesday and Thursday during the second week, while the parties alternated each weekend having the children from Friday through Monday. Plaintiff stated that the change was necessary to accommodate his new work schedule. He asserted that it was similar to the existing schedule to which the children were accustomed and that his son from a previous relationship would be on the same schedule. On the other hand, defendant proposed a four-week rotation that she believed would better meet the children's needs. She opined that it would be better for the children to have a secure base to return to. She did not feel that spending more than two days at a time at plaintiff's house was best for the children. Nonetheless, defendant wanted the children to be able to make fun memories with plaintiff and have him be involved in their schooling, so the proposal included both a full weekend and weeknights with plaintiff.

In regard to the parenting-time factors listed in MCL 722.27a(7), the trial court concluded that Factor (c), the likelihood of abuse or neglect of the child during parenting time favored defendant. The court found that the other factors were either inapplicable or neutral. In support of its acceptance of defendant's proposed schedule, the court reiterated its concerns with plaintiff's historic choice of discipline, his abuse of animals, and the dysregulation that defendant observed from the children upon their return from plaintiff's home. Moreover, the court observed that plaintiff did not explain how his proposed schedule was in the children's best interests, he only testified that the change was necessary on the basis of his work schedule.

The trial court's conclusion that defendant's proposed schedule was in the best interests of the children was not against the great weight of the evidence. See *Demski*, 309 Mich App at 444. The court's concerns were supported by testimony that was presented at trial. As previously discussed in this opinion, defendant testified that plaintiff fed MM hot sauce as punishment for biting, locked PM in her room, and threatened to break her other daughter's ankle. She also

testified that plaintiff abused the family dog in the presence of the children. Finally, she provided testimony that the children were dysregulated when they returned to her home after staying with plaintiff. Although plaintiff identifies testimony and evidence that contradicts defendant's observations, there was testimony to support the trial court's ruling. As a result, we conclude that the court did not make factual findings against the great weight of the evidence, and the court's acceptance of defendant's proposed parenting-time schedule did not amount to a palpable abuse of discretion. See *Shade*, 291 Mich App at 32.

Plaintiff further asserts that the change in parenting time constituted a change in the established custodial environment. We disagree. Although the new parenting-time schedule results in plaintiff's having three less overnights with the children a month, he still has the children overnight two to three nights a week, which includes a long weekend once a month. "If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed." *Pierron*, 486 Mich at 86. A decrease of three overnights with the children over the span of a month will not change who the children look to for guidance, especially when they are staying with plaintiff. See *id*. Accordingly, plaintiff has not shown that the acceptance of defendant's proposed parenting-time schedule amounted to an abuse of discretion. See *Demski*, 309 Mich App at 444.

D. CHILD SUPPORT

Finally, plaintiff argues that the court erred by retroactively modifying the child support payments he was voluntarily making during the course of the proceedings because defendant never sought a modification. We agree.

"Child support orders and the modification of such orders are reviewed for an abuse of discretion." *Peterson v Peterson*, 272 Mich App 511, 515; 727 NW2d 393 (2006). "Whether a trial court properly operated within the statutory framework relative to child support calculations and any deviation from the child support formula are reviewed de novo as questions of law." *Id*. at 516. The trial court's factual findings are reviewed for clear error. *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007).

"It is well settled that children have the right to receive financial support from their parents and that trial courts may enforce that right by ordering parents to pay child support." *Id*. at 672-673. Trial courts are required to calculate support following the Michigan Child Support Formula (MCSF). *Id*. at 673. MCL 552.603 concerns the enforcement of support orders. According to MCL 552.603(2),

> Except as otherwise provided in this section, a support order that is part of a judgment or is an order in a domestic relations matter is a judgment on and after the date the support amount is due as prescribed in [MCL 522.605c], with the full force, effect, and attributes of a judgment of this state, and is not, on and after the date it is due, subject to retroactive modification. No additional action is necessary to reduce support to a final judgment. Retroactive modification of a support payment due under a support order is permissible with respect to a period during

-10-

which there is pending a petition for modification, but only from the date that notice of the petition was given to the payer or recipient of support.

MCL 552.603(3) further provides that "[t]his section does not apply to an ex parte interim support order or a temporary support order entered under supreme court rule." The parties may also agree to modify a support order with the court's approval. MCL 522.603(5).

In this case, defendant requested child support calculated pursuant to the MCSF in her answer and counterclaim for divorce, which was filed on April 29, 2019. It appears that initially, plaintiff voluntarily provided $500 a month in child support; however, the parties participated in an investigation with the Friend of the Court and the Friend of the Court recommended that plaintiff pay $458 a month. Plaintiff started paying $458 a month following the recommendation. However, the trial court did not sign the Friend of the Court recommendation.

At the conclusion of the trial, defendant asked for child support to be calculated from May 1, 2019, because she asked for child support in her answer and counterclaim. Plaintiff objected to this request, arguing that MCL 552.603(2) prohibits the retroactive application of a child support order. The trial court agreed with defendant, concluding that her request was valid because she requested child support in her answer and counterclaim. However, defendant's request for child support was not a request for an interim or temporary child support order. Rather, her request was for child support to be awarded in the judgment of divorce. Moreover, it does not appear that there were any temporary or interim child support orders entered in this case. Plaintiff voluntarily paid child support to defendant following their separation. The child support order was entered as part of the judgment of the divorce after the parties presented their proofs at trial. As a result, the child support order became effective upon entry of the judgment of divorce, and it could not be retroactively applied to the date in which defendant filed her counterclaim. See MCL 522.603(2). Therefore, the trial court erred by calculating child support from May 1, 2019. See *Thompson v Merritt*, 192 Mich App 412, 421; 481 NW2d 735 (1991) (explaining that an emergency interim order is not subject to the statutory prohibition of retroactive modification because it differed significantly "from an order of support that is part of a judgment or an order that is entered later in the proceedings after the parties have had a chance to present evidence on the issue").

We affirm the portions of the judgment of divorce that concern the legal custody of the children and the parenting-time schedule. We reverse the portion of the judgment of the divorce concerning the commencement of child support and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Brock A. Swartzle

-11-